**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert MERCADO, Jr., aka Gato,
Defendant–Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Daniel Bravo, Defendant–Appellant.**

**Nos. 02–50284, 02–50341.**

United States Court of Appeals,
Ninth Circuit.

Argued Aug. 5, 2004.

Submitted Sept. 8, 2004.

Decided Sept. 8, 2004.

Jack P. Dicanio, Esq., USLA—Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Terry J. Amdur, Esq., Terry Amdur Law Offices, Pasadena, CA, for Defendant–Appellant.

Robert Edward Dugdale, Esq., USLA—Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Gregory Nicolaysen, Esq., Encino, CA, for Defendant–Appellant.

Before: B. FLETCHER, CANBY, and RAWLINSON, Circuit Judges.

### MEMORANDUM *

Robert Mercado, Jr. and Daniel Bravo appeal their convictions and sentences for racketeering conspiracy in violation of 18 U.S.C. § 1962(d), and conspiracy to aid and abet narcotics trafficking in violation of 21 U.S.C. § 846. The charges arise from the activities of the so-called "Mexican Mafia." Mercado challenges the district court's order denying his motion to suppress the fruits of the first of several wiretaps authorized in the investigation of that organization. Bravo challenges the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

district court's denial of his motion to sever his trial and his motion to dismiss the indictment for outrageous government conduct. Both defendants challenge the district court's consideration of acquitted conduct in fashioning their sentences on the charges of conviction. We have jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291. We affirm the convictions and remand for possible resentencing after the Supreme Court decides pending cases on Guideline Sentencing.

### A. Wiretap

■ Mercado moved to suppress all the evidence obtained as a result of the interceptions of wire communications on the ground that the application for the initial wiretap on the first intercepted line ("Line 1") did not meet the "necessity" requirement. Mercado was not a target of the wiretap on Line 1, and none of his conversations was intercepted on that line. Information obtained from the wiretap of Line 1 was used, however, to obtain warrants for later wiretaps that did intercept Mercado's communications. The district court denied the motion and Mercado appeals. We review *de novo* the district court's ruling on a motion to suppress. *See United States v. Shryock*, 342 F.3d 948, 975 (9th Cir.2003), *cert. denied,* — U.S. ——, 124 S.Ct. 1729, 158 L.Ed.2d 411 (2004).

We conclude that Mercado does not have standing to challenge the wiretap application for Line 1. Standing is governed by 18 U.S.C. § 2518(10)(a), which provides that any "aggrieved person" may suppress the contents of an unlawfully intercepted communication or evidence derived therefrom. An "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C.

§ 2510(11). Thus, "[i]n order to qualify as a person aggrieved by an unlawful search and seizure one must [be] ... one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Alderman v. United States*, 394 U.S. 165, 173, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (internal quotation marks omitted). Therefore, "a defendant may move to suppress the fruits of a wire-tap only if his privacy was actually invaded; that is, if he was a participant in an intercepted conversation, or if such conversation occurred on his premises." *United States v. King*, 478 F.2d 494, 506 (9th Cir.1973).

Although Mercado has standing to challenge the validity of the wiretaps on Lines 7, 8, or 9, the lines on which his communications were intercepted, he attacks those wiretaps only on the ground that probable cause for them resulted from the tap of Line 1, which he contends was invalid. Mercado lacks standing, however, to challenge the tap of line 1 because that line did not serve his premises, nor were any of his conversations intercepted on that line. *See King*, 478 F.2d at 506; *see also United States v. Williams*, 580 F.2d 578, 583 (D.C.Cir.1978); *United States v. Wright*, 524 F.2d 1100, 1102 (2d Cir.1975); *United States v. Scasino*, 513 F.2d 47, 49–50 (5th Cir.1975); *United States v. Gibson*, 500 F.2d 854, 855 (4th Cir.1974). We therefore reject Mercado's wiretap challenge.

### B. Outrageous Government Conduct

■ Bravo appeals the district court's order denying his motion to dismiss the indictment on the ground of outrageous government conduct. Bravo argues that the government engaged in outrageous conduct by allowing, or failing to prevent its paid informant, Turscak, from engaging

in criminal activity, including murder, conspiracy to commit murder, assault, extortion, and drug trafficking. We review *de novo* the district court's denial of a motion to dismiss for outrageous government conduct that rises to the level of a due process violation, *see United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir.), *cert. denied*, 540 U.S. 995, 124 S.Ct. 496, 157 L.Ed.2d 395 (2003), and we review for an abuse of discretion the district court's refusal to exercise its supervisory powers to dismiss an indictment because of outrageous government conduct. *See United States v. Garza–Juarez*, 992 F.2d 896, 903 (9th Cir. 1993).

The government's conduct warrants dismissal of the indictment only if "that conduct is so excessive, flagrant, scandalous, intolerable and offensive as to violate due process." *Garza–Juarez*, 992 F.2d at 904; *see also Gurolla*, 333 F.3d at 950 ("outrageous government conduct is limited to extreme cases in which the government's conduct violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.") (internal quotation marks omitted). The standard for outrageous government conduct is extremely high. *See Garza–Juarez*, 992 F.2d at 904. It is met, for example, when "the government engineers and directs a criminal enterprise from start to finish," *Gurolla*, 333 F.3d at 950 (internal quotation and editing marks omitted), or when "the government operates, for an extended period of time, an actual and illegal apparatus." *Garza–Juarez*, 992 F.2d at 904 (internal quotation and editing marks omitted).

There is no evidence in the record that the government knew of Turscak's criminal conduct, much less that it directed or authorized any such criminal activity. Turscak agreed not to participate in any unlawful activities as a condition to his role as a government informant. In addition, according to the affidavits of Assistant United States Attorney Jack DiCanio, FBI Special Agent Eddie Lee, and FBI Special Agent David Olsen, these government agents: (1) were not aware of any criminal activity by Turscak while he served as a government informant, (2) advised Turscak of his obligation not to engage in any unauthorized criminal conduct, and (3) did not become aware of Turscak's criminal activity until after Turscak dropped out of communication with the government in April 1998. It was to be expected that Turscak would have conversations with other Mexican Mafia members and associates regarding criminal activity—his duty as a paid informant was to gather exactly this type of information. It was not unreasonable for the government to assume that any talk of criminal activity was within the scope of Turscak's duties as an informant and would not proceed to actual criminal conduct on Turscak's part. The record also indicates that, although a possible "green light" on Martinez had been discussed for months, the government had reason to believe that such a decision had not become final. As soon as the government knew that Martinez was in actual and immediate danger, law enforcement officers warned Martinez of the credible threat on his life, even though warning Martinez could have compromised the entire investigation.

We conclude that the government's conduct was not the type of "excessive, flagrant, scandalous, intolerable and offensive" conduct that warrants dismissal of the indictment. *See Garza–Juarez*, 992 F.2d at 904. The government did not "engineer[ ] and direct[ ] a criminal enterprise from start to finish," *Gurolla*, 333 F.3d at 950 (internal quotation marks omitted), nor did it "operate[ ] . . . an actual and illegal apparatus." *Garza–Juarez*,

992 F.2d at 904 (internal quotation marks omitted). There was accordingly no violation of due process, and the district court did not abuse its discretion in declining to dismiss the indictment as an exercise of supervisory power.

### C. Severance

■ The district court severed the trial of the non-death-eligible defendants from that of defendants like Mercado and Bravo, who faced charges that made them eligible for the death penalty. Bravo appeals the district court's order denying his motion to sever his trial from that of the other death-eligible defendants. We review for an abuse of discretion the district court's denial of a motion to sever. *See United States v. Sarkisian,* 197 F.3d 966, 978 (9th Cir.1999).

We reverse a district court's denial of a motion to sever "only when the joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion [on the motion to sever] in just one way, by ordering a separate trial." *United States v. Johnson,* 297 F.3d 845, 855 (9th Cir.2002) (internal quotation marks and citation omitted). It was a reasonable decision for the district court to group in one trial those defendants who faced charges related to the Montebello murders. Trying the death-eligible defendants together was not "so manifestly prejudicial" as to mandate a separate trial. *Id.* Furthermore, the jury acquitted the defendants on several of the most serious charges, strongly indicating that they were able to compartmentalize and appraise the evidence against each individual defendant. *See United States v. Unruh,* 855 F.2d 1363, 1374 (9th Cir.1987). We conclude that it was not an abuse of discretion to deny any further severance.

### D. Sentencing Based On Acquitted Conduct

The government urged the court to consider, for purposes of sentencing, conduct of which the jury had acquitted the defendants. The district court, relying on *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), found beyond a reasonable doubt that, despite the jury's acquittal, the defendants had participated in the murders of Serrano, Gutierrez and Delgadillo, the conspiracy to murder Turscak, Detevis, Lorenzo Jeronimo Lopez, Matt Turscak and Rachel Turscak, extortion, and drug dealing. On the basis of these findings, the district court determined that the total adjusted offense level was 46. That level, considered along with the defendants' Criminal History Category of I, led to a sentencing guideline range of life imprisonment. The district court sentenced Mercado and Bravo to 20 years imprisonment, the statutory maximum under 18 U.S.C. § 1963(a) and 21 U.S.C. § 841(b)(1)(C).[1]

Mercado and Bravo both appeal the district court's fact finding and consideration of this acquitted conduct in sentencing. This challenge clearly involves issues raised by the Supreme Court's decision in *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and this court's decision in *United States v. Ameline,* 376 F.3d 967 (9th Cir.2004). In the interest of the prompt resolution of these sentencing issues, we decline to address them in the first instance. Because the Supreme Court has pending two appeals that are likely to shed light on

---

1. According to their presentence reports, the total offense level for both Mercado and Bravo, absent consideration of any acquitted conduct, would have been 19; with a Criminal History Category of I, that level yields a sentencing guideline range 30 to 37 months imprisonment.

*Blakely's* effect on the United States Sentencing Guidelines, *see United States v. Booker,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004); *United States v. Fanfan,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004), we remand to the district court with instructions to resentence and conduct any other appropriate proceedings in accord with those Supreme Court decisions if they affect Mercado's and Bravo's sentences.

**CONVICTIONS AFFIRMED; SENTENCES REMANDED.**