**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

EDWARD B. JOHNSON,
      *Defendant-Appellant.*

No. 02-50618

D.C. No.
CR-00-00226-
LGB-01

OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Argued June 7, 2004
Submitted April 13, 2006
Pasadena, California

Filed April 13, 2006

Before: Stephen S. Trott, Pamela Ann Rymer, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Trott

## COUNSEL

Mary E. Kelly, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Cheryl O'Connor Murphy, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

TROTT, Circuit Judge:

For his role as the getaway driver in a bank robbery, Edward Johnson was convicted of one count of conspiracy to commit bank robbery and one count of bank robbery. He was sentenced to 165 months in prison, well within the 240 months statutory maximum for the crimes of conviction. Drawing our attention to an array of errors, he appeals both the conviction and his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm his conviction, but vacate his sentence and remand for plenary resentencing.

**I**

On February 23, 2000, Johnson drove the getaway car in a carefully planned bank robbery, which was executed by accomplice co-defendants Charley Robinet and Marcus Timmons. During the week before the robbery, Johnson rented two cars, a Dodge Neon and a Lincoln Navigator. Robinet was with him when he rented the Navigator. The day before the crime, Johnson, Robinet, and Timmons left the smaller Neon in a parking lot several blocks from the bank they intended to rob. On the day of the robbery, they drove to that lot, parked the Navigator, and piled into the Neon. Johnson then drove the Neon to the rear of the bank, where he dropped off Robinet and Timmons, armed respectively with a handgun and a rifle, and wearing matching denim overalls and ski masks.

While Johnson stayed with the Neon, his accomplices entered the bank from the rear and ordered everyone to the

floor. Timmons guarded the lobby with the rifle. Robinet jumped the counter and demanded money from a teller, Ali Sabzi. Robinet then dragged Sabzi to the vault area. Upon learning Sabzi did not have the key to access the vault, Robinet pistol-whipped and kicked him. From this attack, Sabzi received bruises, rug burns, and a head laceration requiring stitches. Robinet independently proceeded to force the bank manager, Kristie Inglis, to open two vaults at gunpoint. Robinet had Inglis place the cash in a bag, and he and Timmons fled out the front door where Johnson was waiting for them in the Neon, which Johnson testified was barely large enough for him and his daughter.

A high speed chase ensued. The three managed to elude authorities long enough to get to the Navigator and switch vehicles as planned. Not deceived by the robbers' chicanery, the authorities continued their pursuit. With Johnson again at the wheel, the Navigator collided with a number of vehicles and fled at dangerous speeds until a spike strip placed across the freeway blew out the tires, enabling authorities to apprehend the trio.

*Procedural History*

Johnson initially pleaded guilty to the three counts contained in the original indictment. He then successfully moved to withdraw that plea. Next, a grand jury returned a superseding indictment charging Johnson with: (1) conspiracy to commit bank robbery, 18 U.S.C. § 371; (2) armed bank robbery, 18 U.S.C. § 2113(a), (d); and (3) brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c). Johnson admitted being involved in the crime, but went to trial to contest the portion of the charges relating to the use of firearms.

At trial, over Johnson's objection, the government submitted a lesser included instruction to the jury on the second count, giving the jurors the option of convicting Johnson of the lesser offense of bank robbery if they could not reach a

unanimous guilty verdict on the "armed" element of that count. The jury failed to reach a unanimous verdict on count 3, which charged brandishing of a firearm, or on the armed element of count 2, so they returned guilty verdicts on only count 1 and on the lesser included (unarmed) bank robbery on count 2.

Johnson then moved for acquittal on count 3 pursuant to Rule 29. Fed. R. Crim. P. 29. The court denied his motion and granted the government's motion to dismiss count 3 "without prejudice."

Johnson was sentenced in a pre-*Blakely/Booker* setting — wherein the Sentencing Guidelines were regarded as mandatory — to 165 months imprisonment, 3 years supervised release, and a $200 mandatory special assessment. Johnson had zero criminal history points. His sentence was enhanced (1) six levels for using a firearm, (2) two levels for bodily injury, and (3) two levels for physical restraint. The court denied his request for a reduction for acceptance of responsibility.

Johnson appeals the denial of his Rule 29 motion for acquittal on count 3, brandishing a firearm during a crime of violence, claiming that the jury's failure to convict on that count amounted to an implicit acquittal. He argues from this asserted premise that principles of double jeopardy and collateral estoppel require the dismissal with prejudice of the § 924(c) charge. He argues similarly that application of a sentencing enhancement for using a firearm during commission of the crime was improper because the jury did not convict on the gun elements of the indictment. In support of this argument, he relies again on double jeopardy and collateral estoppel. He appeals separate sentencing enhancements for bodily injury and physical restraint, arguing that they amounted to impermissible "double counting." Lastly, he argues that he was entitled to a three-level reduction for acceptance of

responsibility, claiming that the court's denial of this benefit was punishment for going to trial.

## II

We review the denial of Johnson's motion for acquittal pursuant to Rule 29 de novo. *United States v. Somsamouth*, 352 F.3d 1271, 1274-75 (9th Cir. 2003).

## III

*Motion for Acquittal*

When the jury could not agree to a verdict on the charge of brandishing a firearm, Johnson moved for acquittal pursuant to Rule 29. In turn, the government successfully moved for dismissal without prejudice. In our de novo review of the denial of Johnson's motion, "we review the evidence presented against [Johnson] in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Somsamouth*, 352 F.3d at 1274-75 (internal quotation marks and citation omitted).

**[1]** Convictions for the use of firearms during the commission of certain felonies pursuant to 18 U.S.C. § 924 may be supported under a conspiracy theory. *United States v. Castaneda*, 9 F.3d 761, 765 (9th Cir. 1993), *overruled on other grounds*, *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Johnson*, 886 F.2d 1120, 1123 (9th Cir. 1989). The record here reveals ample evidence to support the charge that guns were used during the course of the bank robbery, and that it was reasonably foreseeable to Johnson that they would have been. Evidence showed that all three of the robbers participated in the detailed planning for this crime. The jury was presented with evidence that upon entry and exit, Robinet and Timmons were wielding the weapons in an obvious fashion. The Neon used to approach and leave the

bank was very small, so it is unlikely that Johnson had not noticed that one of his confederates was carrying a rifle, which was most probably transferred from the Navigator to the Neon in Johnson's presence. Based on these facts, a rational trier of fact could have found the essential elements of the § 924(c) charge beyond a reasonable doubt, as evidenced by the jury's votes. Some of the jurors, at least, were not convinced of his lack of guilt. Moreover, the jury did not return a verdict on the armed element of Count 2 or the charge of brandishing a firearm on Count 3. In simple terms, and contrary to his argument, Johnson was not acquitted of these charges, and he was therefore not entitled to a dismissal with prejudice of the § 924(c) charge on double jeopardy or collateral estoppel grounds. Thus, the denial of the motion for acquittal was proper, and the question of the ultimate disposition of this charge remains open on remand.

*Sentencing — Calculation of Sentence*[1]

**[2]** Now that the dust generated by the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004) has been mostly settled by *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc), it is clear that Johnson's sentence is defective. The jury convicted him of conspiracy to commit unarmed bank robbery and the lesser included offense of unarmed bank robbery, but the jury returned no findings of fact with respect to three factors stemming from the reasonably foreseeable conduct of his accomplices which the court used on the basis of clear and convincing evidence to enhance his sentence: (1) the use of a weapon,[2] (2) the infliction of bodily injury upon a victim,[3] and (3) the physical restraint of

---

[1]Because we remand for plenary resentencing before a new judge, a review of Judge Baird's decision not to award credit for acceptance of responsibility is no longer appropriate.

[2]U.S.S.G. § 2B3.1(b)(2).

[3]U.S.S.G. § 2B3.1(b)(3).

the victims.[4] Ordinarily, under the authority of *Ameline*, we would simply remand Johnson's sentence "for the purpose of ascertaining whether the sentence imposed would have been materially different had the district court known that the Sentencing Guidelines were advisory." *Ameline*, 409 F.3d at 1074. Here, however, Judge Baird has retired. Accordingly, we must vacate Johnson's sentence and remand for a full resentencing hearing before a new judge and imposition of a new sentence. *United States v. Sanders*, 421 F.3d 1044, 1052 (9th Cir. 2005).

**[3]** We note, however, that neither principles of double jeopardy nor collateral estoppel nor *Ameline* and *Booker* would preclude the district court on resentencing from appropriately considering factual allegations that Johnson is responsible for the use of weapons during the robbery, as well as bodily injury and physical restraint. *United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge . . . .").[5]

Conviction **AFFIRMED**. Sentence **VACATED AND REMANDED**.

---

[4]U.S.S.G. § 2B3.1(b)(4).

[5]Johnson's argument that the rule against "double convicting" prevents the sentencing court from relying on both bodily injury and physical restraint as separate conduct has no merit. The robbers' conduct here with respect to different victims would support consideration of both factors. *United States v. Fisher*, 132 F.3d 1327, 1328-29 (10th Cir. 1997).