**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ROBERT MERCADO, JR.,
*Defendant-Appellant.*

No. 05-50624

D.C. No.
CR-99-00083-
DOC-11

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DANIEL BRAVO, aka's Sporty; Seal
G,
*Defendant-Appellant.*

No. 05-50860

D.C. No.
CR-99-00083-
DOC-7

OPINION

Appeals from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
November 13, 2006—Pasadena, California

Filed January 22, 2007

Before: Betty B. Fletcher, Ferdinand F. Fernandez, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Fernandez;
Dissent by Judge B. Fletcher

## COUNSEL

Terry Amdur, Pasadena, California, for defendant-appellant Mercado; Elliot E. Stanford, Pacific Palisades, California, for defendant-appellant Bravo.

Robert E. Dugdale, Assistant United States Attorney, Organized Crime and Terrorism Section, Los Angeles, California, for the plaintiff-appellee.

## OPINION

FERNANDEZ, Circuit Judge:

Robert Mercado, Jr., and Daniel Bravo appeal their sentences for conspiracy to violate RICO,[1] 18 U.S.C. § 1962(d), and for conspiracy to aid and abet narcotics trafficking. 21 U.S.C. § 846. They assert that in calculating their sentences under the United States Sentencing Guidelines, the district court erred when it considered criminal activity which had

---

[1]Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68.

been charged in the indictment, but which the jury determined had not been proved beyond a reasonable doubt. We affirm.

## BACKGROUND

As part of the government's prosecution of members of the Mexican Mafia, Mercado and Bravo were charged with: (1) violating RICO, 18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); (3) conspiracy to distribute narcotics, 21 U.S.C. § 846; (4) five counts of violent crimes in aid of racketeering activity, 18 U.S.C. § 1959(a); (5) conspiracy to commit murder; and (6) five counts of brandishing and discharging a firearm. They were found guilty of the RICO conspiracy and of the drug conspiracy, but were acquitted of the other charges.

At sentencing,[2] the district court stated that the question was "whether it remains permissible after *Booker* for a Court to consider acquitted conduct when sentencing a defendant, provided that the sentence imposed does not exceed the statutory maximum sentence authorized for crimes for which the defendant was convicted." The district court concluded that "when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory guidelines, it is not bound by jury determinations reached through application of the more onerous, reasonable doubt standard." Thus, it considered the criminal activity charged in the acquitted counts when it sentenced Mercado and Bravo on the counts for which they were convicted. Those sentences did not exceed the statutory maximum possible sentences under the counts of conviction.

---

[2]Actually, this was a resentencing after we remanded for that purpose. *United States v. Mercado*, 110 Fed. Appx. 19, 23-24 (9th Cir. 2004).

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review claims that a sentence is unconstitutional de novo. *See United States v. Leon H.*, 365 F.3d 750, 752 (9th Cir. 2004).

## DISCUSSION

Mercado and Bravo appeal their sentences and claim that their constitutional right to a jury trial was violated when the conduct involved in the crimes for which they were acquitted was considered by the district court. U.S. Const. amend. VI. We disagree.

**[1]** We start, as we must, with *United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) (per curiam). In that case, the Supreme Court considered holdings by this court "that sentencing courts could not consider conduct of the defendants underlying charges of which they had been acquitted." *Id.* at 149, 117 S. Ct. at 634. It rejected that notion, and after pointing out that " 'an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof,' "[3] it went on to "hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."[4] That would seem to be a complete answer to the issue before us.

But, argue Mercado and Bravo, once *Booker*[5] was decided,

---

[3]*Id.* at 156, 117 S. Ct. at 637.

[4]*Id.* at 157, 117 S. Ct. at 638.

[5]*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

*Watts* was necessarily so undermined and limited that it no longer controls. Thus, they say, our pre-*Watts* jurisprudence is renascent and prevents consideration of conduct "underlying charges of which they had been acquitted." *Watts*, 519 U.S. at 149, 117 S. Ct. at 634.

**[2]** We are not convinced. True it is that the Supreme Court did point out that the Sixth Amendment issue regarding mandatory Sentencing Guidelines, which it was then considering, was not presented in *Watts* because that case actually focused on the Fifth Amendment's Double Jeopardy Clause. *Booker*, 543 U.S. at 240 & n.4, 125 S. Ct. at 754 & n.4. But that did not strike *Watts* from the jurisprudential books. While the *Watts* holding might have become problematic under a mandatory guideline system, the Court went on to declare that even before the Guidelines, federal judges could look to the "*real conduct*" of a defendant. *Id.* at 250, 125 S. Ct. at 759. And, said the Court:

> Congress expected this system to continue. That is why it specifically inserted into the [Sentencing] Act the provision cited above, which (recodifying prior law) says that
>
> > "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.
>
> This Court's earlier opinions assumed that this system would continue. That is why the Court, for example, held in *United States v. Watts* . . . that a sentencing judge could rely for sentencing purposes upon a fact that a jury had found *unproved* (beyond a reasonable doubt).

*Id.* at 251, 125 S. Ct. at 760. That regime was preserved when the provisions that made the Guidelines mandatory were excised. *Id.* at 245, 125 S. Ct. at 756-57. To put it another way, the constitutional propriety of a sentencing court's consideration of conduct which underlay an acquitted charge existed before creation of the Guidelines and continues to exist today, despite the possibility that it would not exist if the Guidelines were mandatory, which they are not.

**[3]** We are, therefore, satisfied that the core principle of *Watts* lives on and that the district court could constitutionally consider the acquitted conduct. In that we are not alone.

In fact, in a case where a jury "[i]n a special interrogatory . . . determined that the government had failed to prove [a crime] beyond a reasonable doubt," we pointed out that: "The Supreme Court has held that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge." *United States v. Lynch*, 437 F.3d 902, 915-16 (9th Cir.) (per curiam) (en banc), *cert. denied*, ___ U.S. ___, 127 S. Ct. 89 (2006). And in yet another case, even though there had been an acquittal, we cited *Watts* and stated that "neither principles of double jeopardy nor collateral estoppel nor *Ameline* and *Booker* would preclude the district court on resentencing from appropriately considering factual allegations that [defendant] is responsible for the use of weapons during the robbery, as well as bodily injury and physical restraint." *United States v. Johnson*, 444 F.3d 1026, 1030 (9th Cir. 2006).

**[4]** Moreover, every other Court of Appeals to consider the issue has agreed with the proposition that the use of acquitted conduct at sentencing does not violate the Constitution. *See United States v. Gobbi,* No. 06-1643, slip. op. at 22-23 (1st Cir. Dec. 28, 2006) (*Watts* survives *Booker*); *United States v. Farias*, 469 F.3d 393, 399-400 (5th Cir. 2006) (same); *United States v. Hayward*, 177 Fed. Appx. 214, 215 (3d Cir.) (same), *cert. denied*, ___ U.S. ___, 127 S. Ct. 270 (2006); *United*

*States v. Dorcely*, 454 F.3d 366, 371 (D.C. Cir.) (neither Fifth nor Sixth Amendment violated), *cert. denied*, ___ U.S. ___, 127 S. Ct. 691 (2006); *United States v. High Elk*, 442 F.3d 622, 626 (8th Cir. 2006) (even after *Booker* acquitted conduct can be considered); *United States v. Vaughn*, 430 F.3d 518, 525-27 (2d Cir. 2005) (*Watts* survives *Booker*), *cert. denied*, ___ U.S. ___, 126 S. Ct. 1665, 164 L. Ed. 2d 405 (2006); *United States v. Price*, 418 F.3d 771, 787-88 (7th Cir. 2005) (same); *United States v. Ashworth*, 139 Fed. Appx. 525, 527 (4th Cir.) (per curiam) (Sixth Amendment not violated), *cert. denied*, ___ U.S. ___, 126 S. Ct. 765, 163 L. Ed. 2d 594 (2005); *United States v. Magallanez*, 408 F.3d 672, 684-85 (10th Cir.) (same), *cert. denied*, ___ U.S. ___, 126 S. Ct. 468, 163 L. Ed. 2d 356 (2005); *United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir.) (same), *cert. denied*, ___ U.S. ___, 126 S. Ct. 432, 163 L. Ed. 2d 329 (2005).

[5] In fine, we join, rather than rain upon, the parade of authority that finds no Sixth Amendment violation when sentencing judges consider conduct underlying acquitted counts.[6]

## CONCLUSION

[6] We hold that *Booker* has not abrogated the previously prevailing constitutional jurisprudence that allowed sentencing courts to consider conduct underlying acquitted criminal charges.

AFFIRMED.

---

[6]Mercado and Bravo also assert that their double jeopardy rights were violated, despite *Watts*. From what we have already said, it follows, *mutatis mutandis*, that they cannot prevail on that claim.

B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that district courts can rely on acquitted conduct when sentencing criminal defendants.[1] Although the majority holds that *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), presents a "complete answer to the issue before us," maj. op. at 861, the Supreme Court has concluded otherwise, as do I. *United States v. Booker*, 543 U.S. 220 (2005). In *Booker*, the Court explained that *Watts* addressed only a "very narrow" Fifth Amendment issue unrelated to the Sixth Amendment question then before the Court. *Id.* at 240 & n.4. As the Court emphasized, *Watts* did not consider, let alone decide, whether the Sixth Amendment was violated by reliance on acquitted conduct at sentencing.

Despite this clear limitation of *Watts*'s holding, the majority here applies *Watts* to the Sixth Amendment issue before us, ignoring *Booker*'s requirement that the jury's verdict alone must authorize a defendant's sentence. *Id.* at 235. This application defies logic. When a jury refuses to convict defendants of several counts, but the trial court nonetheless relies on that same acquitted conduct to increase the defendants' sentences *sevenfold*, the jury has not authorized the resulting sentences in any meaningful sense.

Reliance on acquitted conduct in sentencing diminishes the jury's role and dramatically undermines the protections enshrined in the Sixth Amendment. Both *Booker* and the clear import of the Sixth Amendment prohibit such a result.

---

[1] Defendants have also raised a Fifth Amendment challenge to the consideration of acquitted conduct. The majority does not discuss this argument, but I believe it has been squarely foreclosed by *United States v. Watts*, 519 U.S. 148 (1997).

## I.  *FACTS*

This case stems from the large-scale prosecution of alleged Mexican Mafia, or "Eme," members. As part of the prosecution, defendants Mercado and Bravo were charged with: (1) violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962(c)) (count one); (2) RICO conspiracy (18 U.S.C. § 1962(d)) (count two); (3) conspiracy to distribute narcotics (21 U.S.C. § 846) (count three); (4) five counts of violent crimes in aid of racketeering ("VICAR") (18 U.S.C. § 1959(a)), including participation in three murders (counts five through seven), and two counts of assault with a deadly weapon (counts eight and nine); (5) conspiracy to commit murder (count fourteen); and (6) five counts of brandishing and discharging a firearm (18 U.S.C. § 924(c)) (counts twenty-three through twenty-seven). Bravo was charged additionally with a VICAR count for conspiracy to murder (18 U.S.C. § 1959(a)(5)) (count fifteen), and a count of using a firearm during the conspiracy to murder (18 U.S.C. § 924(c)) (count twenty-eight). Mercado also was charged with an additional VICAR count for conspiracy to murder (18 U.S.C. § 1959(a)(5)) (count sixteen).

At trial, the jury returned verdicts of guilty against both Mercado and Bravo on counts two (RICO conspiracy) and three (conspiracy to distribute narcotics), but acquitted them of the more serious, remaining counts. The Presentence Report ("PSR") recommended a Guideline sentence of 30-37 months, based on the counts of conviction. However, the district court chose to disregard the sentencing recommendation, believing that *Watts* required it to consider defendants' acquitted conduct. At sentencing the court found beyond a reasonable doubt that defendants had participated in the murders and conspiracies to murder of which they had been acquitted. Relying on its own factual determination rather than the jury's, the court imposed the maximum sentence allowed by statute — a 20-year term that constituted a sevenfold increase over the sentence recommended in the PSR.

Defendants appealed their convictions and sentences, raising the acquitted conduct issue, among others. We affirmed defendants' convictions in an unpublished opinion but remanded their cases to the district court for re-sentencing. *United States v. Mercado*, 110 Fed. Appx. 19 (9th Cir. 2004). We did not decide the acquitted conduct issue, believing that the Supreme Court's pending decisions in *Booker* and *Fanfan*[2] might provide guidance to the district court. *See id.* at 24 (remanding with instructions to resentence defendants and "conduct any other appropriate proceedings in accord with those Supreme Court decisions").

Following the Supreme Court's decision in *Booker*, the district court resentenced both defendants. Mercado was resentenced on August 1, 2005, Bravo on October 24, 2005. After reviewing *Booker*'s holding, the district court affirmed its earlier decision to consider acquitted conduct, and found beyond a reasonable doubt that defendants had committed the acts of which they were acquitted at trial. Guided by this finding, the court resentenced each defendant to a 20 year term.

## II.  *DISCUSSION*

Animating *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny is a palpable concern for the erosion of the right to jury trial fueled by changes in the sentencing system. Over the last few decades, new developments have threatened the jury's historical province, diminishing the role of the jury and ceding it to the trial judge. *See Booker*, 543 U.S. at 236-37. Increased legislative regulation of sentencing created a new sentencing regime in which legislatures selected certain facts that, if found, would lead to heavier sentences or increased sentencing ranges. *Id.* at 236. These facts were often found by the judge — not the jury — as part of the sentencing process, thus diminishing the importance of the jury verdict

---

[2]The Court granted certiorari in *United States v. Fanfan*, 542 U.S. 946 (2004), and decided it as part of the Court's opinion in *Booker*.

as the predicate for the sentence. "It became the judge, not the jury, who determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance." *Id.* As judge-found sentencing enhancements increased, the importance of the jury verdict diminished, reducing the jury's decision, in some cases, "to the relevant importance of low-level gatekeeping." *Jones*, 526 U.S. at 244.

Troubled by this development, the Supreme Court sought to "preserv[e this] ancient guarantee under a new set of circumstances" — an effort motivated not "by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." *Booker*, 543 U.S. at 237. Specifically, the Court took steps to "guarantee[ ] that the jury would still stand between the individual and the power of the government under the new sentencing regime."[3] *Id.* Towards this end the Court issued a series of rulings, beginning with *Jones v. United States*, 526 U.S. 227 (1999), in which it identified the substantive core of the right to jury trial and defended that core against judicial and legislative infringement. These rulings eschewed formal analysis, focusing on the substantive question of whether a particular practice or entity undermined the jury's ability to interpose itself between the government and the accused.

As the Court recognized, the jury could not insulate defendants from government overreaching unless empowered to

---

[3]This interposition was necessary to protect against the overreaching of the central government and its various officials, including prosecutors and judges, under the rubric of fighting crime. *See Apprendi*, 530 U.S. at 477 (describing trial by jury as necessary "to guard against a spirit of oppression and tyranny on the part of rulers" and "as the great bulwark of [our] civil and political liberties") (quoting 2 J. Story, Commentaries on the Constitution of the United States 540-41 (4th ed. 1873)); Akhil Amar, The Bill of Rights 84 (1998) (noting that "the jury played a leading role in protecting ordinary individuals against government overreaching" and that "the jury could thwart overreaching by powerful and ambitious prosecutors and judges").

find all of the facts relevant to sentencing and to thereby control, within limits, the resulting punishment. Absent these protections, the government and its officials could circumvent the jury, presenting alleged key facts directly to the judge, thus attenuating the connection between verdict and punishment.[4] Accordingly, the Court's recent Sixth Amendment decisions prohibit the imposition of any sentence based on the judge's finding of an essential fact — i.e. any sentence not authorized by the jury verdict.[5] *Booker*, 543 U.S. at 235.

It is in this context that we must decide whether the jury has authorized a 20-year sentence for defendants, despite its refusal to convict them of the very conduct that the district court relied upon to increase their sentences from 30-37 months to 240 months. I conclude that the consideration of acquitted conduct violates the Sixth Amendment. Because neither the majority nor the court of appeals decisions upon which it relies addresses the issue of jury authorization, I find neither persuasive.

## A.   Related Authority

Whether, post-*Booker*, a judge may rely on acquitted conduct at sentencing without violating the Sixth Amendment is

---

[4]As *Jones* recognized, "[i]f a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment." 526 U.S. at 243-44.

[5]For instance, the recent sentencing decisions have forbidden judicial determinations of "harm to the victim," which trigger an increased sentencing maximum, *Jones*, 526 U.S. at 232; judicial "sentencing factor" findings that raise the statutory maximum, *Apprendi*, 530 U.S. at 478, 494; judicial determination of "aggravating factors" necessary to impose the death penalty, *Ring v. New Jersey*, 536 U.S. 584, 588-89 (2002); and Guidelines findings that increase the applicable Guidelines range, *Booker*. 543 U.S. at 235.

an issue of first impression in this Circuit. The majority ignores *Booker* in claiming that the Supreme Court has provided a "complete answer" to this issue in *United States v. Watts*. In *Booker*, the Court took pains explicitly to limit and distinguish *Watts*, explaining that *Watts* answered a very different question than that presented in *Booker*. As Justice Stevens clarified,

> In *Watts* . . . we held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines. In neither *Witte* nor *Watts* was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue we confront today was simply not presented.

543 U.S. at 240. Stevens further elaborated that "*Watts*, in particular, presented a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument. It is unsurprising that we failed to consider fully the issues presented to us in these cases." *Id.* at 240 n.4.

In short, *Watts* has been "explicitly disavowed by the Supreme Court as a matter of Sixth Amendment law [and] has no bearing on this case in light of the Court's more recent and relevant rulings." *United States v. Faust*, 456 F.3d 1342, 1349 (11th Cir. 2006) (Barkett, J., dissenting). The majority's reliance on *Watts* as dispositive of Sixth Amendment issues is misplaced.[6] *Watts* neither considered nor decided the issue currently before us.

---

[6]To the extent the majority argues that all relevant conduct can be considered by the district court, as it was before *Watts* or *Booker*, I agree that district courts have considerable latitude to review conduct outside of the offense of conviction. However, the effect of *Apprendi* and its progeny is to exclude acquitted conduct from this set of permissible considerations because it is not authorized by the jury verdict.

Nor has the Ninth Circuit addressed the Sixth Amendment issue we face. The government cites only other Circuits' opinions for this proposition, but does cite two Ninth Circuit decisions — *United States v. Johnson*, 444 F.3d 1026, 1030 (9th Cir. 2006), and *United States v. Lynch*, 437 F.3d 902, 916 (9th Cir. 2006) (en banc) (per curiam) — in its briefing. However, neither of these opinions discusses *Watts* in the context of the Sixth Amendment issue before us. Rather, the two cases discuss *Watts* only in passing, noting that *Watts* remains good law — a fact acknowledged by *Booker* itself. These fleeting references may serve to re-confirm *Watts*'s Fifth Amendment holding, but do not extend *Watts* to the Sixth Amendment context.

The opinions from other Circuits cited by the majority assume that no Sixth Amendment problem exists as long as the sentencing court stays beneath the statutory maximum. Clearly not so. The appropriate inquiry is whether a sentence has been authorized by the jury, not whether a sentence is below the statutory limit. I also note that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303. While sentences that exceed the statutory maximum lack the necessary jury authorization, so too do sentences that rely on conduct for which the jury has explicitly withheld authorization. In both cases, the judge's sentence relies on a factual finding not made by the jury, exposing the defendant to a penalty exceeding the maximum to which he would have otherwise been subject. *See Ring*, 536 U.S. at 602 ("A defendant may not be expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.") (quotations and citations omitted). By failing to consider the substantive impact that the consideration of acquitted conduct has on the right to jury trial, each of these decisions ignores the impact of *Jones*, *Apprendi*, *Ring*, *Blakely*, and *Booker*. Thus, I am not content, as the majority is, to join this "parade of authority."

### B.    A Substantive Look at the Use of
### Acquitted Conduct

The Supreme Court's goal in the *Apprendi* line of cases was not to exalt the "abstract dignity of the statutory maximum," *Faust*, 456 F.3d at 1350, but to preserve the "great bulwark of [our] civil and political liberties," *Apprendi*, 530 U.S. at 477, "under a new set of circumstances." *Booker*, 543 U.S. at 237. The Court's Sixth Amendment analytical approach was "one not of form, but of effect," *Ring*, 536 U.S. at 604 (quoting *Apprendi*, 530 U.S. at 494), and "reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial." *Blakely*, 542 U.S. at 305.

Consequently, any Sixth Amendment sentencing analysis, post-*Booker* (post-*Apprendi,* really), must focus on the substantive goal of ensuring the jury trial right's continued vitality in a new legal context. This requirement was made abundantly clear in *Booker*, when the government attempted to distinguish *Booker* and *Apprendi* on formal grounds. The government argued that *Apprendi* was not controlling because its holding addressed only statutory maxima and not Guidelines ranges. In response, the Court declared, "[m]ore important than the language used in our holding in *Apprendi* are the principles we sought to vindicate. Those principles are unquestionably applicable to the Guidelines." *Booker*, 543 U.S. at 238. The principles cited by the Court included the Framers' fear of "judicial despotism" and "arbitrary punishments upon arbitrary convictions" — fears guarded against by the judgment of a defendant's peers. *Id.* at 238-39 (requiring that "the truth of every accusation . . . should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors.").

These principles apply with even greater force to the consideration of acquitted conduct at sentencing. By considering acquitted conduct, a judge thwarts the express will of the jury

— as opposed to the implicit or imputed will of the legislature that is thwarted by a sentence above the statutory maximum — and imposes a punishment based on conduct for which the government tried, but failed, to get a conviction. Such a sentence has little relation to the actual conviction, and is based on an accusation that failed to receive confirmation from the defendant's equals and neighbors.

In order to guarantee that the jury remains capable of protecting the accused against judge, prosecutor, and the central government, the Court now insists that "the judge's authority to sentence [must] derive[ ] *wholly* from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended." *Blakely*, 542 U.S. at 306 (emphasis added); *see also Booker*, 543 U.S. at 235 (finding it unacceptable when "the jury's verdict alone does not authorize the sentence.")*; Ring*, 536 U.S. at 602 (holding Arizona death penalty statute unconstitutional because it exposed defendant to a greater punishment than that authorized by the jury verdict); *Apprendi*, 530 U.S. at 494 (explaining that the relevant inquiry is whether "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict").

The jury's powers in criminal cases are confined to issuing verdicts. As such, any authorization or withholding of authorization must be communicated through the jury's verdict, and the jury's ability to insulate defendants from the government — as the Constitution requires — is entirely dependent upon the integrity of its verdict. As the connection between verdict and punishment erodes, the significance of the jury's verdict is correspondingly diminished. Such attenuation makes it increasingly unlikely that the jury verdict has authorized the ensuing punishment. Just because the jury has authorized *a* punishment does not mean that the jury has authorized *any* punishment.

If the jury does not substantively authorize the defendant's sentence, it cannot ensure the people's "control in the judiciary," as required by the Sixth Amendment. *Blakely*, 542 U.S. at 306. Its role can be slowly whittled away by the same erosion that both the Framers and Blackstone[7] warned against, *see Jones,* 526 U.S. at 247-48 (citing the fear of Blackstone and the Framers "that the jury right could be lost not only by gross denial, but by erosion"); *Apprendi*, 530 U.S. at 483 (same), reducing juries to the low-level gatekeeping function described in *Jones*, 526 U.S. at 246, and leaving defendants at the mercy of judge and prosecutor — the very same entities against whom the jury was supposed to protect the defendant.[8]

As the court explained in *United States v. Pimental*, 367 F. Supp. 2d 143 (D. Mass. 2005), "[i]t makes absolutely no sense to conclude that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, and *also* conclude that the fruits of the jury's efforts can be ignored with impunity by the judge in sentencing." *Id.* at 150. *See also United States v. Coleman*, 370 F. Supp. 2d 661, 670 (S.D. Ohio 2005) ("*Apprendi* and

---

[7]Blackstone

identif[ied] trial by jury as "the grand bulwark" of English liberties . . . [and] contended that other liberties would remain secure only "so long as this *palladium* remains sacred and inviolate, not only from all open attacks, (which none will be so hardy as to make) but also from all secret machinations, which may sap and undermine it; by introducing new and arbitrary methods of trial, by justices of the peace, commissioners of the revenue, and courts of conscience. And however *convenient* these may appear at first, (as doubtless all arbitrary powers, well executed, are the most *convenient*), yet let it be again remembered, that delays, and little inconveniences in the forms of justice, are the price that all free nations must pay for their liberty in more substantial matters.

*Jones*, 526 U.S. at 246 (quoting 4 W. Blackstone, Commentaries on the Laws of England 342-44 (1769)).

[8]This is not a complete list. Juries were also intended to protect defendants against the entire range of government figures.

its progeny, including *Booker*, have elevated the role of the jury verdict by circumscribing a defendant's sentence to the relevant statutory maximum *authorized* by a jury; yet, the jury's verdict is not heeded when it specifically withholds authorization. Stated differently, the jury is essentially ignored when it disagrees with the prosecution.")

*Pimental* states the point well. The fact that a jury has not authorized a particular punishment is never more clear than when the jury is asked for, yet specifically withholds, that authorization. In many ways, the consideration of acquitted conduct is a more direct repudiation of the jury verdict than is a sentence that exceeds the statutory maximum. In the case of acquitted conduct, the jury has been given the opportunity to authorize punishment and specifically withheld it. When a judge imposes a sentence above the statutory maximum, the jury has never specifically denied authority; it has simply never been asked. By allowing judges to consider conduct rejected by the jury, the court allows the jury's role to be circumvented by the prosecutor and usurped by the judge — two of the primary entities against whom the jury is supposed to protect the defendant. *See Duncan v. Louisiana*, 391 U.S. 145, 156 (1968) ("Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased or eccentric judge."). The jury simply cannot protect a defendant against the overzealous prosecutor or the compliant, biased, or eccentric judge, if those same individuals have the authority to ignore the jury's verdict. To reiterate, the consideration of acquitted conduct severs the connection between verdict and sentence.

*Blakely* noted that "[t]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should have to suffer the modest inconvenience of submitting its accusations to 'the unanimous suffrage of twelve of his equals and neighbors,' rather than a lone employee of the State." 542 U.S. at 313-14.

Here, appellants have each been deprived of an additional *seventeen* years of their liberty — a sevenfold increase over their original Guideline calculated sentences. As in *Blakely*, I suspect the Framers would not have thought it too much to demand that the State suffer the modest inconvenience of proving appellants' guilt to twelve of their equals and neighbors before increasing their sentences sevenfold. Nor is it too much to require the state to suffer the consequences of its failure to prove guilt.

*Apprendi* made clear that "the relevant inquiry is one not of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494. In this case, the government sought authorization to punish defendants for a number of crimes. The jury authorized punishment for two counts, but withheld authorization for each of the more serious offenses. As a result, the PSR recommended a sentence in the 30-37 month range. The district court added an additional 203-210 months solely on the basis of its finding that defendants had committed the conduct of which the jury acquitted them.

Had the district court not rejected the jury's finding, defendants would have received a dramatically reduced sentence — a fact disputed by nobody in this case. To hold that any sentence beneath the statutory maximum is acceptable is not enough: *Apprendi* requires examination "not of form, but of effect." *Id.* And here the effect was to expose defendants to a dramatic increase in punishment based upon conduct for which the jury refused to authorize punishment in the only way it could — by acquitting defendants of the most serious conduct with which they were charged. Neither *Jones*, nor *Apprendi*, nor *Ring*, nor *Blakely*, nor *Booker* countenance this result.

I would vacate defendants' sentences on Sixth Amendment grounds and remand to the district court for re-sentencing.