**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MI KYUNG KIM, AKA Katherine Kim,
AKA Jamie Mikyung Kim,

Defendant - Appellant.

No. 09-50203

D.C. No. 2:08-cr-00260-PA-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted June 7, 2010
Pasadena, California

Before:    TROTT and W. FLETCHER, Circuit Judges, and BREYER, District
Judge.[**]

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Charles R. Breyer, United States District Judge for the
Northern District of California, sitting by designation.

Defendant-Appellant Mi Kyung Kim challenges the validity of the 70-month sentence she received after a jury found her guilty of four counts of bank fraud and one count of aggravated identify theft. She maintains that the district court miscalculated her Guidelines offense level by (1) improperly including a two-level enhancement for Kim's abuse of a position of trust, *see* U.S.S.G. § 3B1.3, and (2) erroneously concluding that Kim was responsible for a loss amount that exceeded $200,000. We AFFIRM.

A. **Abuse of Trust Enhancement**

Section 3B1.3 of the Sentencing Guidelines provides that a defendant's offense level should be increased by two levels "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." Applying the enhancement generally requires a two-part inquiry:

> First, did the defendant hold a "position of public or private trust" within the meaning of the Guidelines? Second, if so, did the position "significantly facilitate" the commission of the crime?

*United States v. Contreras*, 581 F.3d 1163, 1165 (9th Cir. 2009), *adopted in relevant part by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2009) (en banc). In *Contreras*, the Ninth Circuit clarified that the "decisive factor" in determining whether the defendant holds a "position of trust" is whether the

2

position is characterized by "professional or managerial discretion." *Id.* at 1165-66.

The district court properly concluded that Kim held a position characterized by professional discretion. Though Kim attempts to portray herself as little more than a translator of loan documents for her non-English speaking clients, the evidence clearly indicates that her role in the loan acquisition process was much more significant. She not only helped her customers complete loan applications, she served as the negotiator and liaison between those customers and the banks. In this role, she exercised significant discretion in determining how best to acquire loans for her customers (including identifying what banks to approach and how to approach them) and in deciding what information to communicate to her customers and to the banks. In short, Kim provided far more than mere translation services.

The district court also correctly found that Kim's position significantly facilitated the commission of her crimes. Kim's role enabled her to obtain personal identifying information from her customers and to use that information to acquire unauthorized loans in their names. Her position as liaison between the banks and her customers also allowed her to conceal from her customers the fact that she had obtained the loans for a period of time long enough to convert the loans to cash for her personal use.

3

In sum, because Kim occupied a position involving substantial professional discretion and because that position significantly facilitated the commission of her crimes, the district court did not err when it applied the abuse of position of trust enhancement in calculating her Guidelines offense level.

**B.      Amount of Loss Enhancement**

The district court likewise did not err when it applied U.S.S.G. § 2B1.1(b)(1)(G)'s 12-level enhancement for a loss amount exceeding $200,000. Kim does not dispute that she was responsible for at least $193,000 in losses, the total value of the loans associated with the four bank fraud counts on which she was convicted.[1] She contends, however, that the district court clearly erred when it concluded that she was also liable for the value of the loans associated with two counts on which she was acquitted. We disagree.[2]

As an initial point, it is well-established law that a district court may consider acquitted conduct when determining a sentence. *See United States v. Mercado*, 474 F.3d 654, 657 (9th Cir. 2007). If the court's reliance on acquitted conduct would have a "disproportionate impact" on a sentence, a defendant's

---

[1] As a result, Kim concedes she was subject to a 10-level enhancement for a loss amount in excess of $120,000. *See* U.S.S.G. § 2B1.1(b)(1)(F).

[2] We review a district court's factual findings for clear error. *United States v. Riley*, 335 F.3d 919, 925 (9th Cir. 2003)

4

criminal liability for acquitted conduct must be supported by "clear and convincing evidence." *See United States v. Staten*, 466 F.3d 708, 720 (9th Cir. 2006). Otherwise, it must be established by a preponderance of the evidence. *See Mercado*, 474 F.3d at 657. Here, the district court applied the heightened "clear and convincing evidence" standard, a decision we assume to be correct.

Applying that standard, the district court found that clear and convincing evidence supported Kim's liability for an $80,000 loan she obtained from Banco Popular in the name of J.B. Lee and a $30,000 loan she acquired from Washington Mutual Bank in the name of Y.H. Lee. This finding was not clearly erroneous.

The evidence supporting Kim's culpability for the $80,000 Banco Popular loan was particularly strong. The loan was one of three that Kim acquired in J.B. Lee's name. While the jury acquitted Kim for her role in obtaining the Banco Popular loan, it found her guilty of fraud with respect to the other two.

Yet, as the district court noted, "[t]here was no difference in terms of the evidence for the fraudulent loans [which resulted in conviction] and [the] Banco Popular [loan], which was the subject of the acquittal." That evidence included Lee's testimony that, though he had given Kim his personal information to obtain a loan from Bank of America, he had not given her permission to apply for the two other loans and was unaware that she had done so. Lee also testified that Kim had

5

not informed him (1) that any of the three loans had been approved or (2) that she had converted the loans to cash. In addition, bank employees from both Washington Mutual and Banco Popular confirmed that Kim, not Lee, had submitted the loan applications. Finally, extensive documentary evidence showed that all three loans were withdrawn to their maximum shortly after they were approved and converted to cash almost immediately.

The record therefore contained both testimonial and documentary evidence demonstrating that Kim had fraudulently acquired the Banco Popular loan. Moreover, the quantum and nature of the evidence related to the Banco Popular loan was nearly identical to the amount and quality of the evidence associated with two loans that Kim was found to have unlawfully obtained. For these reasons, the district court did not err in finding, by clear and convincing evidence, that Kim had fraudulently obtained the Banco Popular loan.

Clear and convincing evidence also supported the district court's finding that Kim was liable for the $30,000 Washington Mutual loan. The victim, Y. H. Lee, testified that he initially provided Kim with his identifying information as part of an application for a mortgage loan. He further testified that, like Kim's other victims, he (1) was unaware that Kim had obtained a business loan in his name, (2) did not authorize Kim to obtain such a loan, and (3) did not receive the proceeds

from the loan. A Washington Mutual representative confirmed that a business loan application, a copy of which was introduced into evidence by the government, had been submitted by Kim in Y. H. Lee's name. Documentary evidence also showed that Kim used a check from one of her businesses to open the checking account that received the loan proceeds and that substantial amounts were withdrawn from the account shortly after it was opened.

Kim fails to identify any significant countervailing evidence in the record that undermined this otherwise substantial evidence of her guilt. Accordingly, the district court did not clearly err in holding her accountable for the loss associated with the $30,000 Washington Mutual loan she obtained in Y. H. Lee's name.

**AFFIRMED.**