**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 11-30337 |
| v. | D.C. No. 2:11-cr-00016-RSL-2 |
| DAN PETRI, *Defendant-Appellant*. | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
December 4, 2012—Seattle, Washington

Filed February 8, 2013
Amended April 12, 2013

Before: Mary M. Schroeder, M. Margaret McKeown,
and Richard C. Tallman, Circuit Judges.

Order;
Opinion by Judge Tallman

# SUMMARY[*]

## Criminal Law

Affirming a sentence, the panel rejected the defendant's contention that a 2002 amendment to Fed. R. Crim. P. 32(i)(3)(B) expanded the district court's fact-finding responsibilities at sentencing.

The panel held that Rule 32(i)(3)(B) requires a district court to address only unresolved factual objections to the presentence report that make a difference in the formulation of an appropriate sentence. The panel also held that the district court adequately explained the reasons for fashioning its sentence.

## COUNSEL

Michael Filipovic, Assistant Public Defender, and Alan Zarky (argued), Research Attorney, Federal Public Defender's Office, Seattle, Washington, for Defendant-Appellant.

Steven Masada (argued), Assistant United States Attorney, Seattle, Washington, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

The Opinion filed on February 8, 2013, is amended as follows:

Slip opinion page 11, line 21: At the end of this paragraph, insert the following sentence: <In addition, Petri acknowledges that the prior version of Rule 32 covered only objections to the presentence report, and the Advisory Committee made clear that the 2002 amendments were not intended to change the meaning of Rule 32 in ways other than explained in the notes. *See* Fed. R. Crim. P. 32 advisory committee's note ("These changes are intended to be stylistic only, except as noted below.").>

With this amendment, the panel has voted to deny the petition for panel rehearing; Judges McKeown and Tallman have voted to deny the petition for rehearing en banc and Judge Schroeder so recommends.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and petition for rehearing en banc are **DENIED**. No future petitions for rehearing or petitions for rehearing en banc will be entertained.

**OPINION**

TALLMAN, Circuit Judge:

A full decade after an amendment to Rule 32 of the Federal Rules of Criminal Procedure, we are asked for the first time to determine whether the amendment represented a vast expansion of the district court's fact-finding responsibilities at sentencing. The defendant, who pleaded guilty to aggravated identity theft and two other counts in connection with an ATM skimming scheme, insists that Rule 32(i)(3)(B) extends the district court's fact-finding responsibility to all matters controverted, no matter how they are presented, throughout the entire sentencing phase. The rule's context and history, though, strongly suggest otherwise and demonstrate an intent to narrow the rule's scope to only those factual objections to the presentence report that have the potential to affect the sentence. Because we cannot square this strong evidence of legislative purpose with the defendant's broad interpretation, we affirm.

**I**

**A**

Defendant Dan Petri, along with at least two co-conspirators, engaged in a scheme to skim account information and personal identification data from ATMs. By attaching a card reader and a camera to an ATM, they would capture a customer's account information and PIN. That information allowed the creation of counterfeit bank cards, which were then used to withdraw funds from customers' accounts.

The government's evidence demonstrated that Petri had placed and removed card readers and cameras on various ATMs in the Seattle area on eleven different occasions between September 25 and November 30, 2010. Petri and his co-conspirators obtained $276,836.02 from more than 300 individual victims. Petri does not contest that he was directly involved in installing the skimming equipment on ATMs and that he made multiple withdrawals of large sums of cash in aid of this criminal enterprise. However, he claims that he received little of the profits and that he was coerced into participating by the ringleader, a man named "Sorin" who has yet to be apprehended.

Petri was indicted on January 19, 2011, and an 18-count Superseding Indictment followed on May 12, 2011. A month before trial, Petri pleaded guilty to three counts: Bank Fraud, Conspiracy to Commit Access Device Fraud, and Aggravated Identity Theft.

**B**

In the presentence report, the probation officer recommended against granting a minor role reduction for Petri, whom she found to be an "average participant[]" in the offense. Before sentencing, Petri's counsel objected to this recommendation in the report. Petri argued that he and his co-defendant were used by the more sophisticated individuals in the scheme, including a man named "Sorin," whom Petri identified as the ringleader. Petri also argued that he had received very little of the proceeds, suggesting that his role was that of a minor participant. The probation officer responded that Petri's "repeated involvement" showed that his role was "essential" and that he was therefore an "average participant." She added that she "had no information as to

how much the defendant and other coconspirators made during this offense."

Petri's sentencing memorandum repeated his assertion that he "made very little profit from this endeavor." It also raised a claim that "Sorin," the putative missing mastermind, had coerced Petri into committing the crime. Counsel argued in his written memorandum that Petri claimed Sorin had helped him gain entry to the United States and then tricked Petri into using a counterfeit card the first time. After that, he allegedly "pressed Petri . . . to assist him in the criminal activity" by threatening to go to the police and have him deported. The sentencing memorandum further claimed that "Petri . . . feared Sorin" and that Petri and another conspirator "had observed [Sorin] carrying a weapon. While his threats were not overt, i.e., by pointing a weapon at them, the implication to both of them was clear—they would be physically harmed if they did not go along with Sorin's plan." Petri did not cite any evidentiary support for these claims in his memorandum. Nor did the defense offer Petri's testimony or any other witnesses to establish these assertions at the sentencing hearing.

At the sentencing hearing, Petri's counsel again invoked the alleged co-conspirator "Sorin." Defense counsel argued that recently discovered documents, not in evidence, established that Sorin was the major player in the scheme and that Petri had limited involvement. Counsel also claimed that Petri made "slightly less than $20,000 of wire transfers," and that "[h]e's getting very little money out of this."

The government responded that because the wire transfers were to Petri's native Romania, there was no way to confirm the veracity of his claim and that all that could be said was

that proceeds of his criminal activities, beyond reach for restitution to his victims, would be waiting for Petri when he was deported after completion of his federal prison sentence. As for Petri's claims of coercion, the government could only say that it was still seeking the whereabouts of the mysterious "Sorin."

At the conclusion of the sentencing hearing, the district court imposed its sentence. After concluding that the offense was "very serious," the court determined that Petri's role, while not that of a "leader or a ringleader," was "very, very active." The court declined to apply a minor role reduction, as Petri had requested in counsel's written and oral objections to the presentence report. The district judge ruled:

> But I do think that, while I am not going to grant him a minor role adjustment, I take the role into account in saying that it justifies a somewhat lower sentence than the guidelines would call for.
>
> I believe that what is appropriate, considering all of the 3553 factors here, is to leave the guideline range at offense level 24, criminal history category 1, which is a guideline range of 51 to 63 months.
>
> But I'll depart downward from that to a sentence of 36 months on Counts 3 and 7, to run concurrently, but consecutive to the 24 months on Count 17, for punishment to take into consideration the amount of loss, the role that Mr. Petri played, the fact that he will be deported, the fact that, as a deportable alien,

> he is not allowed to program in the same way that other people can in the prison situation, and that, under the circumstances, I believe the total sentence of 60 months, or five years, is appropriate.

The 60-month sentence fell 15 months short of the low end of the Guidelines range the district court ultimately settled upon and 27 months below the minimum sentence cited in the written plea agreement's preliminary Guidelines calculation. Petri timely appealed the judgment. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## II

Petri urges us to adopt a broad reading of Federal Rule of Criminal Procedure 32(i)(3)(B), which was amended specifically in 2002 to narrow its reach. Because the structure of the rule and the intent of its drafters demonstrate that a "controverted matter" extends only to objections to the presentence report that make a difference in the formulation of an appropriate sentence, we affirm.

## A

At sentencing, the district court has at its disposal "a wide variety of information that could not be considered at trial." *United States v. Messer*, 785 F.2d 832, 834 (9th Cir. 1986). This evidentiary flexibility creates a constitutional concern: if the information is materially false or unreliable, the district court's reliance on it may violate a defendant's due process rights. *Id.* In 1983, the Supreme Court (without any subsequent congressional revision) promulgated a revised

Rule of Criminal Procedure to help alleviate this concern. *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984) (discussing former Rule 32(c)(3)(D)); *see also* Rules Enabling Act, 28 U.S.C. §§ 2071–72.

The 1983 revision, from which the rule at issue in this case descended, "require[d] the district court, in entertaining a challenge to a presentence report, either to decide the challenge on the merits, or to state that no finding is necessary because the court will not rely on the controverted information." *Ibarra*, 737 F.2d at 827. The Advisory Committee's note to the 1983 rule stated that it "is intended to ensure that a record is made as to exactly what resolution occurred as to controverted matter[s]." Fed. R. Crim. P. 32 advisory committee's note to 1983 Amendments.

Until 2002, there was no doubt that the rule required the district court to only address unresolved objections to the presentence report. Then a 2002 amendment modified the rule to current Rule 32(i)(3), upon which Petri relies. The rule now provides:

> At sentencing the court:
>
> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>
> (B) must—*for any disputed portion of the presentence report or other controverted matter*—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

(C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32(i)(3) (emphasis added). In the decade since the amendment went into effect, we have occasionally been called upon to rule on the provision's scope, but we have never addressed whether the amendment broadened the rule's reach beyond objections to the presentence report. *See, e.g.*, *United States v. Saeteurn*, 504 F.3d 1175 (9th Cir 2007); *United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008).

## B

Petri's argument is a valiant attempt at grammatical dissection. He argues that by adding "or other controverted matter" the 2002 amendment extends the district court's fact-finding responsibility to every dispute raised throughout the entire sentencing phase. This responsibility, applied to Petri's case, would require the district court to make a specific ruling on the defense's assertions that "Sorin" coerced Petri into complicity and that Petri made only a meager profit from the scheme.

Assuming for the moment that these matters were in controversy, Rule 32 does not extend so far. The purpose and context of the rule demonstrate that the district court need only address unresolved objections to the presentence report that relate to matters in controversy.

The rule, as worded, is somewhat ambiguous. From the plain language of the statute, we cannot determine exactly to what "or other controverted matter" refers. On the statute's

face, the government's suggestion—that it encompasses only specific objections to the presentence report—is no more or less plausible than Petri's interpretation—that it encompasses any controversy that arises during the entire sentencing phase.

Because the Federal Rules of Criminal Procedure, once effective, have the force and effect of law, *see United States v. Marion*, 404 U.S. 307, 319 (1971), we apply "traditional tools of statutory construction" to interpret them. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) (internal quotation marks omitted). When interpreting a statute, words and phrases must not be read in isolation, but with an eye toward the "purpose and context of the statute." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). The purpose and context of Rule 32 demonstrate that the district court was only required to respond to factual objections to the presentence report that relate to a "controverted matter."

The Advisory Committee's notes to the amendment clarify any ambiguity. *Cf. Tome v. United States*, 513 U.S. 150, 160 (1995) (stating that explanatory notes to the Federal Rules of Evidence are "a useful guide in ascertaining the meaning of the Rules"). The rule's previous iteration, as we have discussed, pertained only to unresolved objections to the presentence report. In 2002, the Advisory Committee worried that "a broad reading of the current rule might place an unreasonable burden on the court without providing any real benefit to the sentencing process." Fed. R. Crim. P. 32 advisory committee's note.

The committee revised the rule specifically to "*narrow[]* the requirement for court findings to those instances when *the objection* addresses a 'controverted matter.' If *the objection* satisfies the criterion, the court must either make a finding *on*

*the objection* or decide that a finding is not required because the matter will not affect sentencing or that the matter will not be considered at all in sentencing." *Id.* (emphasis added).

Although Advisory Committee notes "do not foreclose judicial consideration" of a rule's validity and meaning, "the construction given by the Committee is 'of weight.'" *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (quoting *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444 (1946)). The committee left little doubt that it designed this amendment to limit Rule 32 fact-finding responsibility to those situations when *an objection to a presentence report* addresses a "controverted matter." *See United States v. McGee*, 529 F.3d 691, 700 (6th Cir. 2008) (requiring the defendant to "sufficiently controvert *the facts contained in his PSR* to trigger the district court's duty under Rule 32(i)(3)") (emphasis added). The structure of the rule—in which the committee sandwiched subdivision (i)(3)(B) between two provisions that expressly relate to the presentence report—confirms this design. *See* Fed. R. Crim. P. 32(i)(3)(A), (C). In addition, Petri acknowledges that the prior version of Rule 32 covered only objections to the presentence report, and the Advisory Committee made clear that the 2002 amendments were not intended to change the meaning of Rule 32 in ways other than explained in the notes. See Fed. R. Crim. P. 32 advisory committee's note ("These changes are intended to be stylistic only, except as noted below.").

We have mined the Advisory Committee's meeting minutes and agenda books from the time of the amendment, and we find only evidence that confirms this interpretation. In the agenda listing the committee's proposed amendments in March 2001, the proposal that created Rule 32(i)(3) is

referred to as "[CR 32]—findings on controverted matters *in* presentence report." Advisory Committee on Criminal Rules, Agenda Docketing, Doc. No. 1276 at 10 (March 6, 2001). (emphasis added). The meeting minutes reveal that the proposed revision "concern[ed] the contents of the presentence report." Advisory Committee on Criminal Rules, April 2001 Minutes, at 12 (April 25–26, 2001). Nothing in the amendment's history suggests that the committee revised the rule to extend beyond factual objections to the presentence report.

The purpose and context of Rule 32 demonstrate that the amendment signaled an attempt to narrow those disputes with the presentence report on which the district court must make a ruling, not to broaden the court's fact-finding responsibility beyond the report. *See Saeteurn*, 504 F.3d at 1179 n.10 (noting that the "earlier version of Rule 32 . . . contained much broader language than the current version in Rule 32(i)(3)(B)" and that the "Advisory Committee amended the Rule in part to make clear that the rule applies only to factual disputes which affect the temporal term of sentence"); *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003) ("This new rule attempts to eliminate confusion over whether courts were required to make rulings on every objection to the PSR or only those that have the potential to affect the sentence."). This holding is consistent with the due process concerns that Rule 32(i)(3)(B) addresses. Because district courts, probation officers, and the Bureau of Prisons rely so greatly on the presentence report, it is of the highest priority that the court communicate how it has resolved any alleged factual inaccuracies in the report. Sentencing memoranda and oral arguments do not hold the same persuasive power as the presentence report, once adopted by the district court at

sentencing to explain how it fashioned the sentence ultimately imposed.

District courts merit trust in their ability to weigh the evidence and arguments raised in memoranda and the sentencing hearing. *Cf. United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) ("We assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors, not just the Guidelines."). We need not require courts to list their resolution of every assertion made by counsel or the defendant at sentencing. *See United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("We hesitate to read the rule so broadly that the judge is obliged to address every argument that a defendant makes at the sentencing hearing."). We note that although Rule 32(i)(3)(B) applies only to factual objections to the presentence report, there may be other circumstances where disputed evidence at sentencing may counsel for a finding by the sentencing judge. We need not address that situation here.

Although few other circuits have explicitly addressed whether the amendments to what is now Rule 32(i)(3)(B) actually broadened its scope, those that have support our position. Both the Seventh and Tenth Circuits have examined a question closely related to ours: whether the 1994 and 2002 amendments to the rule broadened its application beyond allegations of "factual inaccuracy in the presentence investigation report" to non-factual disputes. Fed. R. Crim. P. 32(c)(3)(D) (1993).

Looking to the Advisory Committee notes, other circuits' continuing limitation of the rule to allegations of factual inaccuracy, and academic commentary and practice guides,

the Tenth Circuit "t[ook the] opportunity to clarify the operative scope of Rule 32 by stating unequivocally that, under each version of the rule, 'to invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy.'" *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1215–16 (10th Cir. 2007) (citation omitted). The court concluded that, because the defendant had "challenged only [a] legal conclusion, rather than disputing factual inaccuracies in the PSR, the district court was not required to make Rule 32(i)(3)(B) findings with respect to [his] contentions." *Id.* at 1216. Although the Seventh Circuit did not define the "precise scope of the rule," it noted that a "sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant." *Cunningham*, 429 F.3d at 678–79.

We do not suggest that the district court was prohibited from considering the assertions that Petri's counsel made in either his sentencing memorandum or at the hearing. But Rule 32 did not *require* the district court to expressly address those assertions that were not factual objections to the presentence report when it pronounced Petri's sentence. The sentencing judge was free to consider those arguments and give them whatever weight, if any, he deemed appropriate. But it was not reversible error to fail to make express findings of fact in response to the defense argument.

## C

Because Rule 32(i)(3)(B) pertains only to unresolved objections to the presentence report, the district court had no responsibility to address either of the arguments that Petri raised during sentencing. It properly denied his request for a

lowering of the offense level based upon his alleged minor role in the offense.

The presentence report makes no mention of how much or how little Petri personally profited from the scheme. Nor does it make any factual assertion regarding whether "Sorin" manipulated or coerced Petri into complicity.[1]

"Only specific factual objections trigger Rule 32(i)(3)(B)." *Stoterau*, 524 F.3d at 1011. A specific factual objection addresses a factual inaccuracy; it does not merely object to recommendations, opinions, or conclusions. *United States v. Linholm*, 24 F.3d 1078, 1085 n.7 (9th Cir. 1994). Petri objected specifically to the probation officer's recommendation against a minor role reduction; he raised these assertions in support of that objection. But he did not allege a factual inaccuracy in the presentence report. The district court therefore had no responsibility to rule on how much he profited or if "Sorin" coerced him.

For good measure, the district court properly resolved Petri's objection to the minor role reduction by referencing the overwhelming evidence that Petri personally placed skimming devices on ATMs and made withdrawals from victims' accounts using counterfeit cards manufactured with the data surreptitiously skimmed—facts from the presentence report that Petri does not dispute.

---

[1] It should also be noted that before he argued to the district court that he was manipulated and coerced into complicity, Petri signed a plea agreement explicitly stating that he "*knowingly and voluntarily* engaged in, and conspired with others . . . to engage in, a scheme that involved identity theft through skimming activity targeting automated teller machines ("ATMs") and the use of stolen personal and financial information to defraud others and steal money." (emphasis added).

Because the arguments Petri raised at sentencing did not contradict any factual assertion in the presentence report, they did not invoke the district court's fact-finding responsibility under Rule 32.**[2]**

## III

Lastly, we must consider Petri's appeal of the district court's explanation of the sentence. We hold that the district court adequately explained the reasons for fashioning its sentence. The law, specifically 18 U.S.C. § 3553, requires no more.

A sentencing court must consider the sentences suggested by the parties after determining the applicable Guidelines range, and under § 3553(c), it must decide if the § 3553(a) factors support the suggested sentence. *Carty*, 520 F.3d at 991. Once the district court selects its sentence, it must give an explanation that "communicates that the parties' arguments have been heard, and that a reasoned decision has been made." *Id.* at 992.

The "district court need not tick off" each factor, but "when a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a

---

**[2]** Our recent decision in *United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013), is consistent with our analysis. In *Doe*, we reasserted that "legal objections do not require explicit findings." *Id.* at 1155 n.12. In *Doe*, the defendant's objection disputed facts "from the PSR," an allegation of factual inaccuracy to which Rule 32(i)(B)(3) certainly applies. *Id.* The district court's refusal to resolve that dispute violated the rule—one of a plethora of the district court's missteps at sentencing that led us to find plain error. *Id.* at 1156. Petri, though, makes no allegation of *any* factual inaccuracy in his PSR.

requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *Id.* at 992–93. Petri argues that because the district court failed to address whether he was manipulated by "Sorin" and whether he made a significant profit from the criminal scheme, the court's explanation did not suffice. We disagree.

Petri asks for more than the district court must provide. In *United States v. Rangel*, 697 F.3d 795 (9th Cir. 2012), we considered a similar claim that even though the district court addressed the defendant's arguments, it did not do so in sufficient detail. *Id.* at 806. We held that "[c]ontext is important, and it is often unnecessary for the district court to provide a lengthy explanation and directly address each and every one of the defendant's arguments." *Id.* The district court's ruling was sufficiently specific to satisfy its obligations under our precedent. *Id.*

The court adequately addressed Petri's argument that he did not play a significant role in the offense—that he was merely a foot soldier in the scheme and not the ringleader. The assertions related to "Sorin" and Petri's illicit proceeds were part of this argument. The district court's explanation demonstrated that it had considered Petri's argument, and the court even reduced the sentence in light of it: "[W]hile I am not going to grant him a minor role adjustment, I take the role into account in saying that it justifies a somewhat lower sentence than the guidelines would call for."

Petri cannot expect the district court to detail its evaluation of every assertion made to support his argument during sentencing. *See id.*; *United States v. Carter*, 560 F.3d 1107, 1119 (9th Cir. 2009) ("[T]he district court here had no obligation to address and resolve each of Carter's arguments

on the record."). This is particularly so where there was no effort made by the defense to bolster the argument with admissible evidence at sentencing. The district court's explanation adequately discharged its duty under § 3553 and our precedent.

## IV

Petri's challenges to his reduced sentence ultimately ask us to impose nonexistent requirements on the district court at sentencing. Rule 32(i)(3)(B) requires a district court to address only unresolved factual objections to the presentence report, and Petri failed to dispute any fact in the report. Similarly, when explaining a sentence, the district court need not address every assertion made within every argument advanced before the court during sentencing.

The district court properly considered the presentence report and the parties' arguments and then adequately explained its reasonable and generous resolution imposing a below Guidelines sentence. The law requires no more.

**AFFIRMED.**